IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JENNIFER JILL HUDSON,

       Plaintiff,

v.

DEREK RICCI and EAU CLAIRE COUNTY[1],

       Defendants.

OPINION and ORDER

19-cv-639-jdp

---

  Jennifer Hudson was arrested for obstructing an officer as he was conducting another arrest. She contends that Eau Claire County Sheriff's Department Deputy Derek Ricci used excessive force and intentionally inflicted emotional distress when he pushed her to the ground. She also contends that once in custody, she received inadequate medical care for injuries she sustained during the arrest. Hudson brings claims against Ricci and Eau Claire County for the violation of her rights under the Constitution and state law. Defendants move for summary judgment. Dkt. 10.

  Hudson opposes summary judgment with her declaration testimony that she did not resist arrest and that Ricci forced her to the ground after she was handcuffed. But dashcam video from Ricci's squad car contradicts her version of the events. In light of the video evidence, no reasonable jury could find that Ricci used excessive force against her. Hudson failed to comply with Wisconsin's notice of claim requirement for her intentional infliction of emotional

---

[1] Hudson named the Eau Claire County Sheriff's Department as a defendant, but the Sheriff's Department is a division of the county and not a separate entity that is subject to suit. *Wagner v. Washington Cty.*, 493 F.3d 833, 835 (7th Cir. 2007). The court deems Eau Claire County, instead of the Eau Claire County Sheriff's Department, as the proper defendant in this case and has amended the caption accordingly. *Id.*

distress claim, and that claim is time-barred anyway. Hudson failed to establish that Ricci deprived her of adequate medical care. And Hudson's claim against Eau Claire County for inadequate medical care is unsupported by evidence that a county policy had anything to do with the alleged failure to provide care. Defendants' motion for summary judgment is granted, and this case will be closed.

PRELIMINARY MATTER

Defendants take the position that their requests for admission, Dkt. 16-1, should be deemed admitted because Hudson had failed to respond to them. Dkt. 16. Hudson initially said that she did not receive the requests for admission so was unable to respond to them. Dkt. 23. The court deferred ruling on the requests for admission, pending a decision on defendants' motion for summary judgment. Dkt. 24. The court allowed Hudson to serve and file her purported responses with the court, but Hudson chose not to. Accordingly, it would be appropriate to deem admitted each of the factual statements in the requests for admission. This would be fatal to Hudson's case.

As it turns out, defendants are entitled to summary judgment on all Hudson's claims even without the admissions. Accordingly, the court need not further consider the question of whether Hudson timely served responses to defendants' requests for admission.

BACKGROUND

The following facts are undisputed unless otherwise noted.[2]

---

[2] Defendants contend that their proposed findings of fact should be deemed admitted because Hudson did not respond to them. Dkt. 9. Hudson did not respond to defendants' proposed facts, but she filed her own additional proposed facts. The court will treat any proposed fact

2

**A. Hudson's arrest**

Jennifer Hudson's partner, Mark Smith, called her in the early hours of August 3, 2016, to ask for a ride home from Chester's Bar in Eau Claire, Wisconsin. Smith had been at the bar with his friend, Peter Brunette, and lost his keys. Hudson drove to Chester's and found the two men arguing in the parking lot. A few minutes later, Eau Claire Sheriff's Department Deputy Derek Ricci pulled into Chester's parking lot to respond to the disturbance.

Ricci asked Smith and Brunette for identification. Smith refused to identify himself and was yelling. Ricci decided to arrest him for disorderly conduct. While arresting Smith, Ricci asked Hudson and Brunette to step away. Brunette moved but Hudson didn't. Ricci asked Hudson to move several more times but she refused.

After Ricci placed Smith into his patrol car, he approached and questioned Hudson. Footage taken from Ricci's dashcam recorded some audio from their conversation, but the next part of their interaction takes place outside the video frame. Dkt. 18-2 (2:12:30–2:13:00). Ricci asked Hudson for identification. She provided her name and phone number. After several seconds of inaudible conversation, Ricci said, "all you gotta do is pay attention and follow orders." *Id.* After several more inaudible seconds, Ricci stated, "I'm telling you right now to leave, otherwise you're going to jail." *Id.* Hudson replied, "take me to jail then, I've got a 14-year-old kid at home." *Id.* Ricci decided to arrest Hudson for obstructing an officer. Dkt. 18, ¶ 32. Ricci held Hudson's wrists behind her back and moved her to the front his squad car, within

---

by defendants as undisputed unless Hudson's additional proposed facts and evidence directly contradict it.

the view of the camera. Hudson's excessive force claim against Ricci is based on what happened next.

Hudson says that she didn't resist arrest. She says that after she was already in handcuffs, Ricci, without provocation, tackled her to the ground, dislocating her shoulder. But Hudson's account is contradicted by the dashcam video. The video shows that Hudson refused to comply with Ricci's orders, and that she resisted his efforts to place handcuffs on her. Dkt. 18-2 (2:12:50–2:15:30). Most critically, the video shows that Ricci took Hudson to the ground *before* she was handcuffed. Hudson also says that Ricci grabbed her breasts during a pat down search. But the video shows that the pat-down search occurred after Hudson was put in handcuffs, and Ricci did not touch her breasts.

After the arrest, another deputy, Edward T. Bell, arrived at the scene. At Ricci's request, Bell took custody of Hudson and walked her to his squad car.

**B. Hudson's medical care at the Eau Claire County Jail**

Bell drove Hudson to the Eau Claire Country Jail where she was booked at 3:09 a.m. Hudson had some blood on her hands and minor scrapes on her knees, which Bell photographed at the jail. Dkt. 17, ¶¶ 16–20; Dkt. 17-1.

The parties dispute whether Hudson asked for medical care at the jail. According to Bell, he asked Hudson if she needed medical assistance and she declined. Dkt. 17, ¶¶ 12–13. Another officer at the jail, David Manthei, also says the he asked Hudson if she needed medical attention and she said no. Dkt. 14, ¶¶ 4–7. Hudson says that each time she was asked if she needed medical attention, she said yes. Dkt. 26, ¶¶ 25–26. She says she finally saw a nurse who offered her Tylenol at 10:00 am the next morning. Defendants say that Hudson did not see a

nurse or get medication at the jail. *See* Dkt. 32, ¶ 27; Dkt. 30, ¶¶ 3–7. Hudson was released at 11:00 a.m., about eight hours after booking. She was not charged with any offense.

ANALYSIS

Hudson raises four claims: (1) Ricci used excessive force during her arrest by throwing her to the ground and by grabbing her breasts when he searched her; (2) Eau Claire County failed to adopt proper arrest procedures and to properly train and supervise Ricci; (3) Ricci intentionally inflicted emotional distress when he used excessive force to arrest her; and (4) defendants denied Hudson prompt and adequate medical care for injuries sustained during her arrest. Dkt. 1. Defendants move for summary judgment on all claims.

To succeed on a motion for summary judgment, the moving party must show that the material facts are not genuinely disputed and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

One basic principle of summary judgment jurisprudence is particularly important in this case: a fact is genuinely disputed "only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). This principle affects the court's consideration of Hudson's uncorroborated declaration, which is contradicted by video evidence.

5

### A. Excessive force claims

#### 1. Excessive force claim against Ricci

Hudson's claim of excessive force used during an arrest is governed by the Fourth Amendment's reasonableness standard. *Stainback v. Dixon*, 569 F.3d 767, 771 (7th Cir. 2009). An officer is authorized to use some physical force or threat of force if necessary to effectuate an arrest. *Id.* at 772. An officer's use of force is unreasonable if, judging from the totality of the circumstances, the officer uses greater force than was reasonably necessary to effectuate the arrest. *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009). Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* An officer may not use significant force against a subdued or even passively resisting suspect. *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 525 (7th Cir. 2012).

Hudson contends that Ricci used excessive force against her in two ways: (1) by grabbing her arm, lifting her, and forcing her to the ground; and (2) by grabbing her breasts during a pat-down search. Dkt. 1.

The only evidence that Hudson adduces to support her version of events is her own declaration. Dkt. 26. She says that Ricci grabbed her wrists behind her back and handcuffed her. Ricci searched her and "inappropriately" grabbed her breasts, which left a scratch mark on her left breast. Dkt. 26, ¶ 16. During the search, Ricci asked her to drop the keys she was holding. She initially refused to comply because she did not want to lose them but eventually let go of the keys. Ricci then "took [Hudson] down to the gravel parking lot by grabbing [her] by the left bicep and lifting [her] up." *Id.* at ¶ 20. Because she was handcuffed, she could not brace her fall and hit the gravel with her left elbow, knees, and side. Her shoulder dislocated

6

and popped back in, and in the process she fractured her elbow. She did not resist arrest at any point. *Id.* at ¶ 14. (She provides no corroborating evidence of the dislocation or fracture.)

Hudson's declaration is admissible evidence that the court would deem sufficient to create a genuine dispute of fact—if Ricci opposed Hudson's evidence only with his own declaration. But when the evidence includes a video recording of the relevant events, "the court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape." *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (citing *Scott v. Harris,* 550 U.S. 372, 379–80 (2007)).

Ricci's dashcam video directly contradicts key points in Hudson's declaration. *See* Dkt. 18-2 (2:12:50–2:15:30). The video shows that Ricci had led Hudson to the squad car while holding Hudson's hands behind her. The conversation between them became louder, and Hudson broke her arms free of Ricci's control and thrashed her arms around. *Id.* (2:13:20) Ricci tried to grab her arms, and forced Hudson to the ground. At that point, only the of top of Ricci's body is visible in the video. But the video shows that Ricci struggled to control Hudson. Ricci told Hudson to drop the keys she was holding, but Hudson refused. After about two minutes, Ricci brought Hudson, now handcuffed, to her feet at the hood of his car. Ricci performed a pat-down search of her hips and shirt around her waist area. At no point during the pat-down did Ricci touch Hudson's breasts. No reasonable jury could credit Hudson's declaration testimony in light of the video evidence.

Ricci used force when Hudson was actively resisting arrest. Hudson does not claim that Ricci used or threatened gratuitous force once they were on the ground; he did not strike her, kick her, or use overly tight handcuffs. Her declaration says that Ricci had his knee on her back while she was on the ground, but she does not say that caused any pain or injury. Ricci's

decision to force Hudson to the ground to gain control of her was reasonable under the circumstances.

Hudson cites *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003), which held that it is unlawful to use excessively tight handcuffs and violently yank the arms of an arrestee who does not resist arrest, does not disobey the orders of a police officer, poses no safety threat, and is suspected of committing only minor crimes. Hudson was not suspected of any serious crime, but the similarity to *Payne* ends there. Hudson resisted arrest and repeatedly disobeyed Ricci's orders to drop her keys. And the officer in *Payne* used much more force than Ricci did. *See id*. at 774.

The court concludes that Hudson's declaration fails to raise a genuine dispute of fact concerning Ricci's use of force. The video evidence shows the reasonable use of modest force against a resisting subject. Ricci is entitled to summary judgment on the merits of her constitutional claim. The court need not address Ricci's qualified immunity argument.

**2. Excessive force claim against Eau Claire County under *Monell***

Hudson contends that Eau Claire County is liable for Ricci's actions because it failed to adopt appropriate arrest, investigative, and detention procedures and it failed to properly train and supervise him. Dkt. 1, ¶ 24. This is commonly referred to as a *Monell* claim: a municipality may be liable under § 1983, but only if the constitutional violation is the result of the municipality's express policy or custom, or an official with policy-making authority authorizes the violation. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)). Hudson has not established any constitutional violation, so her claim against Eau Claire County necessarily

8

fails. *See Wilson v. Warren Cty., Illinois*, 830 F.3d 464, 470 (7th Cir. 2016) (claim against municipality fails if there is no underlying constitutional violation).

And even if there had been an underlying violation, Hudson adduces no evidence whatsoever concerning Eau Claire County's arrest policies, or its efforts to train and supervise Ricci.

**B. Intentional infliction of emotional distress claim**

Hudson contends that Ricci intentionally inflicted emotional distress when he used excessive force against her during her arrest, and thus she brings a separate claim under Wisconsin tort law. Under 28 U.S.C. § 1367(c)(3), the general rule is that a court should relinquish jurisdiction over state-law claims when all federal claims are resolved. *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015). As discussed in the next section, summary judgment will also be granted on Hudson's inadequate medical care claim, so all of her federal claims are resolved. But the court will retain jurisdiction over Hudson's state-law claim because it is not complicated and its resolution is clear: Hudson did not comply with Wisconsin's notice of claim requirement, the claim is time-barred, and it would fail on the merits. *See Cortezano v. Salin Bank & Trust Co.,* 680 F.3d 936, 941 (7th Cir. 2012) ("When the resolution of [the state-law] claims is clear, ... the court may choose to decide them.").

Hudson failed to comply with Wisconsin's notice of claim requirement. Under Wis. Stat. § 893.80(1d)(a), a plaintiff who files suit against a governmental agency or officer must serve a notice of claim within 120 days of the event that gave rise to the action. The notice of claim statute requires strict compliance. *Id.; Taylor v. Syed,* No. 19-CV-299-JDP, 2020 WL 1154785, at *1 (W.D. Wis. Mar. 10, 2020). Hudson served a notice of claim on the Eau Claire

Sheriff's Department and Ricci on December 2, 2016, 121 days after she was arrested and released from jail on August 3, 2016. Dkt. 16-2.

Failure to comply with the notice of claim requirement would be no impediment if the agency had actual notice of the claim and the plaintiff shows that the delay was not prejudicial. Wis. Stat. § 893.80(1d)(a). But Hudson does not claim that defendants had actual knowledge of the claim before December 2, 2016. Hudson instead argues that she is not required to comply with Wisconsin's notice of claim statute under *Felder v. Casey*, 487 U.S. 131, 134 (1988). *Felder* held that Wisconsin's notice of claim requirement does not apply to federal civil rights actions, because a state may not impose such procedural barriers to the enforcement of federal rights. *Id.* at 134. But Hudson's intentional infliction of emotional distress claim is a state-law claim to which § 893.80(1d)(a) applies.

Hudson's lawsuit is also untimely. Under Wis. Stat. § 893.57, an action to recover damages for intentional torts, including intentional infliction of emotional distress, must be brought within three years after the cause of action accrued. For a tort claim, the cause of action accrues on the date that the injury was discovered or with reasonable diligence should have been discovered. *Butler v. Schrieber*, 2010 WI App 135, ¶ 11, 329 Wis. 2d 710, 790 N.W.2d 543 (applying the discovery rule to an intentional infliction of emotional distress claim where the plaintiff said that he did not immediately realize the extent or cause of his injuries).

Hudson was arrested on August 3, 2016; she filed suit more than three years later, on August 5, 2019. Dkt. 1. She does not contend that she discovered her emotional injuries after the date of her arrest and she identifies no other basis for tolling the statute of limitations.

Hudson's claim would fail on the merits. Under Wisconsin law, to prevail on a claim for intentional infliction of emotional distress, a plaintiff must show that the: (1) defendant's

conduct was intentioned to cause emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's conduct was a cause-in-fact of the plaintiff's emotional distress; and (4) plaintiff suffered an extreme disabling emotional response to defendant's conduct. *Rabideau v. City of Racine*, 2001 WI 57, ¶ 33, 243 Wis.2d 486, 501, 627 N.W.2d 795. Ricci's use of force during Hudson's arrest was objectively reasonable under the Fourth Amendment, so she cannot show that his conduct was extreme and outrageous. Hudson has failed to adduce any evidence that she suffered emotional distress in her summary judgment submissions. Ricci is entitled to summary judgment on Hudson's claim for intentional infliction of emotional distress.

## C.  Inadequate medical care claim

Hudson contends that defendants failed to provide her with prompt and adequate medical care for the fractured elbow, scrapes, bruises, and pain that she sustained during her arrest.

The parties discuss Hudson's claim using the Fourteenth Amendment's standard of objective reasonableness for inadequate medical care provided to pretrial detainees. *McCann v. Ogle Cty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018) (citing *Miranda v. Cty. of Lake*, 900 F.3d 335, 351 (7th Cir. 2018)). But Hudson was never charged with an offense, so the Fourth Amendment standard applies. *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). Under the Fourth Amendment, a court considers four factors when determining whether an arrestee's medical care was objectively unreasonable: (1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns. *Id.* Generally, the analysis operates on a sliding scale, balancing the second factor,

11

the seriousness of the medical need, with the third factor, the scope of the requested treatment. *Id.* at 531.

The fundamental problem with this claim is that Hudson's complaint asserts it against "defendants" generally without identifying anyone in particular. Her medical care claim against Ricci fails because she has not adduced any evidence, or even alleged, that he was involved in the denial of her medical care. She says that when she was arrested, she had "obvious injuries," but that statement alone is insufficient to show that Ricci had notice of her medical needs. Hudson says that she fractured her elbow, but she does not say how Ricci would have known about this, nor does she say that she ever requested medical assistance from Ricci. Hudson cannot be heard expressing to Ricci that she was in pain or needed medical care in the dashcam video.

Hudson says that at the jail she was asked if she needed medical attention three times, and that she said yes each time. But Hudson does not identify anyone who denied her care. Bell took custody of Hudson and transported her to the Eau Claire County Jail. Bell and another deputy, David Manthei, submitted declarations stating that they both asked Hudson if she was injured or needed medical attention but she declined care. Dkt. 17, ¶¶ 12–13; Dkt. 14, ¶¶ 4–7. Hudson says that she did not receive medical attention until the next morning when a nurse offered her Tylenol. But Hudson does not name Bell, Manthei, or the nurse as defendants in this case.

Hudson's claim against Eau Claire County itself fails. As explained above, a municipality may only be liable under § 1983 when the constitutional violation arises from express policy, custom, or a policymaking official's decision. *Thomas,* 604 F.3d at 303. So even if Hudson had evidence that a deputy or jail staff objectively and unreasonably denied her

12

medical care, Hudson has not adduced any evidence that the county's policy, custom, or a policymaker's decision caused the denial. Hudson does not address *Monell* liability in her summary judgment opposition brief at all.

Defendants are entitled to summary judgment on Hudson's medical care claim.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 10, is GRANTED.
2. The clerk of court is directed to enter judgment for defendants and close this case.

Entered December 23, 2020.

BY THE COURT:
/s/

_____
JAMES D. PETERSON
District Judge